IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

AE CAPITAL GROUP LLC,

    *Plaintiff*

v.                              Case No.                

NO-H2O USA, INC.

And

EMMET O'BRIEN,

    *Defendants.*

_____/

## COMPLAINT

Plaintiff, AE Capital Group LLC ("Plaintiff" or "AE Capital"), hereby sues Defendant, NO-H2O USA, Inc. ("NO-H2O USA" or the "Company"), NO-H2O Franchising, Inc. ("NO-H2O Franchising"), and alleges:

## NATURE OF THE ACTION

1.      This is a securities fraud, breach of contract, and fraud case brought by AE Capital in connection with its purchase of $425,000.00 of Class A stock in NO-H2O USA on two separate closings in July 2021 and October 2022 (collectively, the "Stock Sale"). NO-H2O USA is the United States arm of an Irish car-wash franchising company, NO-H2O Holding Limited ("NO-H2O Holdings"). The Irish holding company has three Irish subsidiaries: NO-H2O Ireland Ltd., NO-H2O Ireland Franchising Ltd., and NO-H2O Investments Ltd. The four Ireland-based companies are hereinafter collectively referred to as the "Irish Companies").

2.      Through in-person presentations, telephone calls, emails, and other forms of communication, the Defendants have made and continue to make fraudulent representations designed to lure investors into purchasing stock in NO-H2O USA. Based on these fraudulent

misrepresentations, Defendants raised almost $2,000,000.00 for the Stock Sale held in July 2021 based on an inflated $13,000,000.00 pre-money valuation of NO-H2O USA. The money raised is now gone—mostly distributed to Emmet O'Brien or the Ireland Companies—and the anchor Stock Sale investors have resigned from the Company's Board. Defendants' conduct violates the antifraud provisions of federal and state securities laws, as well as Florida's common law. Plaintiff now seeks rescission of the Stock Sale and an award of costs including prejudgment interest, attorneys' fees, expert fees, and court costs.

## JURISDICTION AND VENUE

3.      This court has federal question jurisdiction under the U.S. Constitution pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa of the claims arising under 15 U.S.C. §§ 78j(b), 15 U.S.C. 78(t)(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (SEC).[1] This court has pendent jurisdiction of the Plaintiff's securities fraud claim under Fla. Code § 517.301 and its breach of contract and fraudulent inducement claims under Florida's common law.

4.      This Court has personal jurisdiction over all Defendants pursuant to Section 27 of the Exchange Act. The Class A Stock Investment Agreement (the "Stock Agreement") governs the Stock Sale and requires that all parties submit to the personal jurisdiction of the federal and state courts located in Broward County, Florida.[2] All Defendants used the means and instrumentalities of interstate commerce, including, but not limited to, mail, telephone, and e-mail communications to cause the damages complained of by the Plaintiff.

5.      Venue is proper in the Southern District of Florida under Section 22(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77v(a), 28 U.S.C. § 1391(b), and Section

---

[1] *See* 17 C.F.R. § 240.10b-5.
[2] Exhibit A at 13.

27 of the Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. The securities transaction precipitating this lawsuit was closed in Fort Lauderdale, Florida.

## PARTIES

6.      Plaintiff, AE Capital Group, LLC, is a limited liability company organized in the State of Delaware. AE Capital's Managing Member is Paul Flick. Mr. Flick operates AE Capital from its principal office at 126 Garrett Street, Charlottesville, Virginia 22902. AE Capital purchased the Class A stock of NO-H2O USA at artificially inflated prices during the Stock Sale and has been damaged thereby.

7.      Defendant No-H2O USA Inc. is a Florida corporation with its principal place of business at 1394 NW 65 Terrace, Unit 17, Plantation, Florida 33313. NO-H2O USA is a holding company formed to facilitate the expansion of franchise efforts into the United States by Ireland-based NO-H2O Group. NO-H2O USA holds all the stock in its two subsidiaries: NO-H2O Franchising, Inc. and NO-H2O, Inc. NO-H2O Franchising sold franchise rights to U.S. citizens in multiple states. NO-H2O, Inc. sold supplies to the franchisees.

8.      Defendant Emmet O'Brien is an Irish citizen currently living in the United States pursuant to an L-1 visa. He is domiciled in the state of Florida. His address is 900 SE 2nd Street, Apartment 502, Fort Lauderdale, Florida 33301. At all times relevant to this Complaint, Emmet served as the CEO of NO-H2O USA and the CEO of NoH2O Holdings Limited.

## FACTS

9.      Mr. Flick first learned of NO-H2O USA on September 9, 2020, through Sam Chamberlain, who served as a Director of the Company's. On September 15, 2020, Mr. Flick met

Emmet O'Brien by telephone and listened to his description of NO-H2O USA. Mr. O'Brien stressed the success the NO-H2O brand had already experienced in Europe, its backing by a wealthy Irish investor, the strong capital position of the Company, and its unique competitive advantage: a product formula for its cleaning solution which did not require water to clean and detail cars. During the September 15, 2020, phone call, Mr. O'Brien stated clearly and unequivocally that NO-H2O USA held all the intellectual property associated with its franchise concept in the United States, including its trademarks and servicemarks, logos, web domain, and especially the proprietary formula for its waterless cleaning solution. Mr. Flick was intrigued by the idea of a waterless detailing franchise concept, especially based on Emmet's plans to seek growth in areas of the United States with limited water supplies, including California and Texas.

10.     Mr. O'Brien was always acting in his role as CEO of NO-H2O USA during the September 15, 2020, telephone call with Mr. Flick. His statement that the Company held all of its own intellectual property was made in his capacity as CEO of NO-H2O USA. He represented himself as the head of the Company, an experienced businessman, and the primary "visionary" of NO-H2O. He described NO-H2O as the "uber of car washing" and stated that the next round of investment in the U.S. would be an equity round in the NO-H2O USA holding company. Ownership in the companies which had operated for years in Ireland and other parts of Europe was never proposed by Mr. O'Brien nor requested by Mr. Flick. The call ended when Mr. Flick agreed to make a $400,000 investment in NO-H2O whenever the next funding round occurred. Mr. Flick's capital commitment represented approximately 20% of the funding goal for the investment round.

11.     In April 2021, Emmet O'Brien created a 37-page slideshow regarding the Company and its operations (the "Pitch Deck"). A copy of the Pitch Deck is attached as Exhibit B. The title slide of the Pitch Deck identifies the document as a "US Investment Presentation". In the months

leading up to the Stock Sale, Emmet used the Pitch Deck to distribute information about NO-H2O USA to other U.S. investors. As CEO of NO-H2O USA and the Irish Companies, Emmet had ultimate authority over the marketing materials provided to investors, including the accuracy of its content.

12.     The Pitch Deck reflects the style and veracity of the pitch Mr. O'Brien was making to U.S. investors during the end of 2020 and through the first half of 2021. Slide 27, for example, includes a table of financial information concerning "The Company". The table presents 2019 financial results for four companies: No-H2O Products (Ire), No-H2O Services (Ire), NO-H2O Products (US), and NO-H2O Services (US), with all financial figures listed in USD. In fact, there were no U.S. companies named H2O Products (US) and NO-H2O Services (US). Two different companies had been formed more than two years prior to the development of the pitch deck. One potential reason to change the names in a pitch deck for a franchising company is so that prospective investors cannot easily compare the claimed revenues to the financial statements filed with a company's Franchise Disclosure Document (FDD). In fact, NO-H2O filed FDDs in multiple states that did not match the financial figures made in the Pitch Deck.

13.     The content of the Pitch Deck supports Plaintiff's allegation that Mr. O'Brien falsely represented the ownership rights the Company had in its intellectual property. The Pitch Deck also includes references to the continuing "research and development"[3] and "continued product innovation"[4] the Company would achieve with its waterless cleaning product. In the Five-Year plan, "product" revenue made up almost one-third of the $82,000,000.00 Mr. O'Brien projected.[5] Simply put, the waterless capability was the only distinction between NO-H2O and any

---

[3] Ex. B at 11.
[4] *Id*. at 21.
[5] *Id*. at 28.

other car wash. The Company's ownership of the proprietary formula for the solution was the sole reason Mr. Flick invested in the Company.

14.     On June 30, 2021, the Board of Directors of No-H2O USA approved the issuance of 2,000,000 shares of Class A Stock to accredited investors as defined under Rule 501 of Regulation D of the Securities Act of 1933. Mr. Flick transferred $400,000 to the Company and received approximately $2.75% of the Company's stock. In October 2022, in response to Mr. O'Brien's requested, he contributed an additional $25,000, bringing his total equity in the Company to 2.87454%. Mr. Flick presently owns 429,577.64 shares in NO-H2O USA, which he purchased based on a belief that he would own a percentage of the value attached to the proprietary formula for a waterless cleaning solution.

15.     In early 2023, Mr. Flick learned that the United States-based company did not hold the intellectual property to the proprietary formula. A copy of the email correspondence between Mr. Flick and Mr. O'Brien regarding the Company's ownership of NO-H2O's intellectual property is attached as Exhibit C. The e-mail memorializes the reveal of the material misrepresentation Mr. O'Brien had maintained between September 15, 2020, and January 31, 2023.

16.     Mr. O'Brien's claim that the Company held its own intellectual property was false and materially misleading. He made the claim to Mr. Flick in the September 15, 2020, call knowing that the statement was false; his actions were intended to deceive, manipulate, or defraud the Plaintiff. Mr. O'Brien also prepared the false statements in the Pitch Deck with knowledge that they were false. He committed these acts to increase the likelihood of securing Plaintiff's investment in his company's fundraising effort in the United States and to support the program of rapid expansion he described in the Pitch Deck. He did so with the intent to pay himself an above-market salary and benefits package from the money raised by investment.

17.     Mr. O'Brien may have felt that he needed to improve the chances of AE Capital's investment because NO-H2O's US operation was on financial life support in April 2021. During that month, the average daily balance of NO-H2O Franchising, Inc.'s only bank account was $943.74. NO-H2O Inc.'s average bank account balance was $1,394.36 during that same period. Their parent company, NO-H2O USA, had less than $25,000.00 available in its operating account until April 9, 2021, when the first investor wire was made to execute the Stock Sale.

18.     The Defendants' opportunity and motive to make the false statements is supported by the pattern of transactions between the companies. Instead of capitalizing the U.S. companies once and implementing a corporate budget, Mr. O'Brien operated the three companies by transferring small amounts of operating capital between them whenever a bank balance dipped too low. The system did not work well. The operating accounts for the three U.S. companies were overdrawn approximately 190 times between December 31, 2020, and February 28, 2022, leading to thousands of dollars in overdraft fees. The financial mismanagement of the Company continued until October 2022, when Mr. O'Brien called the Plaintiff and requested an additional $25,000 investment so he could pay the Company's vendors and employees. This $25,000 was booked as an additional investment by AE Capital Group, LLC, and constituted the second part of the Stock Sale.

19.     Beginning in October 2022, both Mr. Flick and Mr. Chamberlain escalated their months-long campaign for updated financial statements from the Company. NO-H2O Controller Jennifer Lynn eventually provided several years' worth of balance sheets, income statements, bank statements, and general ledgers. Ms. Lynn also provided Excel "Dashboard" sheets including historical data about key business events stretching back to 2018. Taken together, and despite inconsistencies and incompleteness, the documents established the Company had been drifting

towards disaster for some time, in large part due to the exorbitant salary and benefits package Mr. O'Brien had awarded himself without seeking or receiving Board approval.

20.     Ms. Lynn provided a partial set of the requested materials between December 3 and December 16. When Mr. Flick noticed irregularities in these documents, he compared the accounting statements with the audited account statements from the FDDs that NO-H2O USA had filed over the past few years. Further inconsistencies between the FDD financial statements and the materials provided by Ms. Lynn led the Plaintiff to call for a special board meeting on January 9, 2023, regarding the Company finances.

21.     During the special board meeting, Mr. Flick and Mr. Chamberlain noted discrepancies between the information provided in the FDDs and the documents provided by the NO-H2O Group's CFO. Eventually, the Board realized the problem was much worse than initially believed. There was nearly 3.5MM of debt allocated between the three U.S. companies and the Irish companies, as well as recapitalization events being booked on opposite sides of the intercompany transactions as both capital contributions and loans. Plaintiff also discovered that $600,000 in unauthorized intercompany loans had been used to balance the debt load between the U.S. and Irish companies. Mr. O'Brien failed to present a viable plan to address the escalating debt and cash problems for NO-H2O USA.

22.     Discovering the deception orchestrated by Mr. O'Brien caused Mr. Flick to lose faith in the NO-H2O officers to steward the Company through its debt crisis, to correct the false certifications on filed FDDs, and to resolve the intercompany transfers variously identified as capital contributions and debt. AE Capital presented a plan by which its affiliate, Premium Service Brands, would recapitalize the US companies and the Irish Companies, dramatically cut overhead and payroll costs, and seek to preserve any value remaining in the franchise concept and its

business relationships. When the CFO of the Irish Companies rejected the proposal, Mr. Flick was forced to resign from the Board. AE Capital requested rescission of the Stock Sale, but no representative of NO-H2O responded.

23.     Emmet O'Brien, because of his apex leadership position within the Company, had an active role and directly participated in the day-to-day management of the Company. Mr. O'Brien had access to internal corporate documents including operating plans, marketing plans, budgets, forecasts, projections, financial statements, sales pipeline trackers, bank statements, and accounting statements, as well as the reports of actual U.S. and European operations to inform and update those internal corporate documents. His position provided access to reports, conversations, and connections with other corporate officers and employees of the Company, as well as the Irish companies. At all times relevant to the allegations made in this Complaint, Mr. O'Brien was privy to information about the Company's business, operations, trends, financial statements, markets and present and future business prospects that was not provided to AE Capital or Mr. Flick. Mr. O'Brien had the opportunity to avoid the losses described herein but failed to do so.

## COUNT I

### Violation of Exchange Act Section 10(b) and Rule 10b-5
### (Against All Defendants)

24.     Paragraphs 1-23 are re-alleged and incorporated herein by reference.

25.     Defendants made false and misleading statements by a telephone call on September 15, 2020, from Emmet O'Brien to Paul Flick concerning the ownership of intellectual property used by the Company. The false and misleading statements caused AE Capital to invest in the July 2021 and October 2022 issuance of Class A stock in NO-H2O USA, Inc.

26.     Defendants knew at the time they made the claims regarding ownership of the intellectual property in NO-H2O USA that the claims false, material, and inconsistent with other

9

documents and records on which both the U.S. and Irish Companies relied in managing the companies' affairs.

27.     Having been assured by Emmet O'Brien that the USA investment vehicle held title to the intellectual property, AE Capital Group, LLC's Managing Member, Paul Flick, executed the Stock Sale Agreement and ultimately transferred $425,000.00 to NO-H2O USA, Inc. in exchange for 429,577.64 uncertificated Class A stock shares.

28.     The value of the shares assigned to AE Capital in July 2021 and October 2022 was $0.98934 per Class A share. As of the date of this filing, Plaintiff's shares are worthless. A liability schedule produced by Emmet O'Brien on January 25, 2023, shows that the three U.S. companies have liabilities totaling $2,042,699.56. These liabilities exceed the sum of the equity and assets of the Company by nearly $1,000,000.00.

29.     The Defendants' fraudulent representations regarding the intellectual property ownership induced AE Capital to participate in the Stock Sale. The fraudulent representations also caused the Plaintiff's shares of stock to become valueless. Moreover, under the terms of the Stock Sale Agreement, the Plaintiff would be unable to sell his Class A Shares even to a willing buyer because the shares constitute restricted securities under the Securities Act. The Plaintiff cannot sell the shares and the Company has declined to register the securities as exempt or to take any which would render them capable of being resold. Plaintiff has no legal means to divest itself of the shares besides rescission of the Stock Agreement.

## COUNT II

### Violation of Florida Code § 517.301
### (Against all Defendants)

30.     Paragraphs 1-23 are re-alleged and incorporated herein by reference.

31.     Defendants made false and misleading statements by a telephone call on September 15, 2020, from Emmet O'Brien to Paul Flick concerning the ownership of intellectual property used by the Company. The false and misleading statements caused AE Capital to invest in the July 2021 and October 2022 issuance of Class A stock in NO-H2O USA, Inc.

32.     Having been assured by Emmet O'Brien that the USA investment vehicle held title to the intellectual property, AE Capital Group, LLC's Managing Member, Paul Flick, executed the Stock Sale Agreement and ultimately transferred $425,000.00 to NO-H2O USA, Inc. in exchange for 429,577.64 uncertificated Class A stock shares.

33.     The value of the shares assigned to AE Capital in July 2021 and October 2022 was $0.98934 per Class A share. As of the date of this filing, Plaintiff's shares are worthless. A liability schedule produced by Emmet O'Brien on January 25, 2023, shows that the three U.S. companies have liabilities totaling $2,042,699.56. These liabilities exceed the sum of the equity and assets of the Company by nearly $1,000,000.00.

34.     The Defendants' fraudulent representations regarding the intellectual property ownership induced AE Capital to participate in the Stock Sale. The fraudulent representations also caused the Plaintiff's shares of stock to become valueless. Moreover, under the terms of the Stock Sale Agreement, the Plaintiff would be unable to sell his Class A Shares even to a willing buyer because the shares constitute restricted securities under the Securities Act. The Plaintiff cannot sell the shares and the Company has declined to register the securities as exempt or to take any which

would render them capable of being resold. Plaintiff has no legal means to divest itself of the shares besides rescission of the Stock Agreement.

## COUNT III

### Breach of Contract
### (Against NO-H2O USA, Inc.)

35.     Paragraphs 1-23 are re-alleged and incorporated herein by reference.

36.     Defendant NO-H2O USA, Inc. entered into the Class A Stock Investment Agreement with AE Capital Group, LLC on or around July 7, 2021. The Agreement imposes certain duties on AE Capital Group and the Company.

37.     At the time the Company entered into the Agreement with AE Capital, it had actual or constructive knowledge that certain of its representations and warranties made under Section 2 were false or materially misleading. Specifically, the Company had actual or constructive knowledge that its representation under Section 2.7 that "[t]he Company is not in violation or default of…any provision of federal or state statute, rule or regulation materially applicable to the Company" was false.[6] The Company had actual or constructive knowledge as of July 7, 2021, that it had filed false Franchise Disclosure Documents with the California Department of Financial Protection & Innovation in 2019, 2020, and 2021. The documents contained the false financial projections contained in the Pitch Deck.

38.     The Company's failure to disclose its false filings in California damaged Plaintiff by inducing AE Capital into a $425,000 purchase that would never have occurred if the false filings were disclosed. The Company's breach was material; any purchaser of securities would balk upon learning that the investment opportunity is subject to governmental investigation, as well as

---

[6] Exhibit C at 3.

criminal and civil penalties. The Company's breach of Section 2.7 of the Agreement caused Plaintiff's loss.

## COUNT IV

### Fraud in the Inducement
### (Against NO-H2O USA, Inc.)

39.     Paragraphs 1-23 are re-alleged and incorporated herein by reference.

40.     Defendants made false and misleading statements by a telephone call on September 15, 2020, from Emmet O'Brien to Paul Flick. The false and misleading statements caused AE Capital to invest in the July 2021 and October 2022 issuance of Class A stock in NO-H2O USA, Inc.

41.     Defendants knew at the time they provided the Pitch Deck that the claims regarding the U.S. companies' 2019 performance were false, material, and inconsistent with other documents and records on which both the U.S. and Irish Companies relied in managing the companies' affairs.

42.     Having been assured by Emmet O'Brien that the USA investment vehicle held title to the intellectual property, AE Capital Group, LLC's Managing Member, Paul Flick, executed the Stock Sale Agreement and ultimately transferred $425,000.00 to NO-H2O USA, Inc. in exchange for 429,577.64 uncertificated Class A stock shares.

43.     The value of the shares assigned to AE Capital in July 2021 and October 2022 was $0.98934 per Class A share. As of the date of this filing, Plaintiff's shares are worthless. A liability schedule produced by Emmet O'Brien on January 25, 2023, shows that the three U.S. companies have liabilities totaling $2,042,699.56. These liabilities exceed the sum of the equity and assets of the Company by nearly $1,000,000.00.

44.     The Defendants' fraudulent representations regarding the intellectual property ownership induced AE Capital to participate in the Stock Sale. The fraudulent representations also

13

caused the Plaintiff's shares of stock to become valueless. Moreover, under the terms of the Stock Sale Agreement, the Plaintiff would be unable to sell his Class A Shares even to a willing buyer because the shares constitute restricted securities under the Securities Act. The Plaintiff cannot sell the shares and the Company has declined to register the securities as exempt or to take any which would render them capable of being resold. Plaintiff has no legal means to divest itself of the shares besides rescission of the Stock Agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment as follows:

A.    Rescind the Class A Stock Investment Agreement signed between Plaintiff and certain Defendants and their officers;

B.    Award compensatory damages in favor of Plaintiff against Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest;

C.    Awarding Plaintiff its reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.    Awarding any equitable, injunctive, or other further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


Dated:          March 28, 2023

                                        Respectfully submitted,

                                        LETO LAW FIRM

                                        201 S. Biscayne Blvd.
                                        Suite 2700
                                        Miami, Florida 33131
                                        Tel.     305-341-3155
                                        Fax:     305-397-1168

                                        */s/ Matthew P. Leto*
                                        MATTHEW P. LETO
                                        Florida Bar No.: 014504
                                        mleto@letolawfirm.com
                                        kzelaya@letolawfirm.com
                                        pleadings@letolawfirm.com


                                        Evan D. Mayo, *pro hac vice motion forthcoming*
                                        Tremblay & Smith, PLLC
                                        105 East High Street
                                        Charlottesville, VA 22902
                                        Telephone:     (434) 977-4455
                                        Facsimile:     (434) 979-1221
                                        evan.mayo@tremblaysmith.com

                                        *Attorneys for Plaintiff AE Capital Group, LLC*